Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Lara A. Petersen, SBN 318475
**OMNI LEGAL GROUP**
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Phone: 310.276.6664
Facsimile: 310.305.1550
omid@omnilegalgroup.com
ariana@omnilegalgroup.com
lara@omnilegalgroup.com

Attorneys for Plaintiff
SIMON OURIAN, M.D.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SIAMAK S. OURIAN, M.D., a/k/a SIMON OURIAN, M.D., an individual,

Plaintiff,

vs.

ONLY GROUP PTE. LTD., a Singapore private limited company d/b/a ONLY AESTHETICS; ADREN HOW, an individual; JERMAINE TEO, an individual; and DOES 1-10, inclusive,

Defendants.

Case No.: 2:18-cv-08454

**COMPLAINT FOR:**

**COPYRIGHT INRINGEMENT; FEDERAL FALSE DESIGNATION OF ORIGIN; FEDERAL TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION UNDER THE LANHAM ACT**

**DEMAND FOR JURY TRIAL**

Plaintiff Siamak S. Ourian, M.D., a/k/a Simon Ourian, M.D. ("Dr. Ourian" or "Plaintiff"), by and through its attorneys, brings this Complaint against Defendants ONLY Group Pte. Ltd. d/b/a ONLY Aesthetics ("ONLY Aesthetics"), Adren How ("How"), and Jermaine Teo (individually, "Teo" and collectively, "Defendants") for injunctive relief and damages under the laws of the United States. Plaintiff alleges as follows:

**PARTIES**

1. Plaintiff is now, and at all times relevant herein was, an individual residing in the

City of Los Angeles, California. Plaintiff is a physician licensed to practice within the State of California and, at all times relevant herein, Plaintiff had a place of business at Epione Medical Corporation in Beverly Hills, California,

2. Plaintiff is informed and believes, and on that basis alleges, that Defendant ONLY Group Pte. Ltd., is now, and at all times relevant herein was, a Singapore private limited company, having a principal place of business in Singapore.

3. Plaintiff is informed and believes, and on that basis alleges, that Adren How, is now, and at all times relevant herein was, an individual residing in Singapore.

4. Plaintiff is informed and believes, and on that basis alleges, that Defendant How is responsible for controlling and directing the activities of ONLY Aesthetics.

5. Plaintiff is informed and believes, and on that basis alleges, that Jermaine Teo, is now, and at all times relevant herein was, an individual residing in Singapore.

6. Plaintiff is informed and believes, and on that basis alleges, that Defendant Teo is responsible for controlling and directing the activities of ONLY Aesthetics.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendants ONLY Aesthetics, How, and Teo are responsible for their acts and for their conduct, which are the true legal causes for the damages herein alleged.

**DOE ALLEGATIONS**

8. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10, inclusive (individual a "Doe Defendant" and collectively, "Doe Defendants"), are unknown to Plaintiff at this time, and Plaintiff, therefore, sues Doe Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint when the same shall have been ascertained. Plaintiff is informed and believes, and based thereon alleges that each Doe Defendant was responsible intentionally, or in some other actionable manner for the events and happenings referred to herein, which proximately caused injury and damage to Plaintiff, as hereafter alleged.

9. Any reference to Defendants shall refer to each named Defendant and all Doe Defendants, and to each of them. Any reference to a particular Defendant shall refer to the

named Defendant only.

**AGENCY**

10. At all times herein mentioned, each Defendant was the agent, servant, joint venturer, partner, or employee of the other Defendants, successor corporations, successors in interest, or entities and, in doing the things herein alleged, were acting within the purpose and scope of said agency or employment at the time of the alleged acts. All Defendants were acting within the scope and course of that agency and employment and with the knowledge and implied and/or express consent and permission of the other Defendants.

**JURISDICITON AND VENUE**

11. This is an action for copyright infringement, false designation of origin, trademark infringement, and unfair competition arising under the copyright and trademark laws of the United States, Titles 17 and 15, United States Code. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. §§ 1331, 1338(a) and (b).

12. Personal jurisdiction as to these Defendants is conferred on this Court because Defendants have caused injury to Plaintiff within the State of California and within this judicial district. On information and belief, Defendants have committed and continue to commit unlawful acts directed to Plaintiff in California, knowing that the brunt of the harm resulting from this conduct will be suffered by Plaintiff in California. Further, Defendant ONLY Group Pte. Ltd. is a foreign private limited company, being registered in Singapore, and provide an Internet presence with a substantial effect on United States commerce, and a substantial effect on commerce in this District.

13. This Court also has personal jurisdiction over Defendants because they have purposefully engaged in using trademarks that are confusingly similar to Plaintiff's registered and applied-for trademarks in connection with related, if not identical, goods and services. As Plaintiff's registered trademarks provided constructive notice of Plaintiff's intellectual property rights and Plaintiff's location, and as Defendants were aware of Plaintiff's use of the marks in California, Defendants knew or should have known that their activities were directed towards California and that the effect of those activities would be felt in California.

14. Additionally, Defendants have used and continue to use Instagram.com, an online photograph and video-sharing social networking service based in San Francisco, California, to post and distribute through the Internet, including to persons in this District, photographs and videos which Plaintiff believes to infringe its intellectual property.

15. Venue is proper in the Central District of California under 28 U.S.C. §1391(b) and (c) in that a substantial injury occurred and continues to occur in this District, a substantial part of the subject property is located here, Defendants' conduct has been directed into this District, and a substantial portion of the events that are the subject of this action took place in this District.

## GENERAL ALLEGATIONS

16. Dr. Ourian possesses intellectual property rights in and to Epione Medical Corporation, including but not limited to protectable trademarks in and to EPIONE and COOLASER (the "Trademarks"), see **Exhibit A**, and in and to various videos subject to copyright protection (the "Copyrighted Work"), see **Exhibit B**.

17. The Defendants have infringed and continue to infringe upon Plaintiff's trademark and copyright rights. Defendants also have committed and intend to continue committing unfair competition.

18. This is an action under 17 U.S.C. §501 for copyright infringement and 15 U.S.C §1125(a) for false designation of origin, trademark infringement, and unfair competition.

## FACTUAL BACKGROUND

19. Dr. Ourian is a physician licensed to practice cosmetic dermatology and, in 1998, founded a premier, state of the art cosmetic surgery center, Epione Medical Corporation ("Epione"), located in Beverly Hills, California. For the past 20 years, at Epione, Dr. Ourian has offered a variety of cutting-edge face, skin, body, and hair aesthetic and laser treatments. Indeed, Epione was one of the first centers in California dedicated to the practice of aesthetic laser surgery. In addition to offering the latest in aesthetic medicine and treatments, Dr. Ourian has invented a signature line of skin care products, which have also become quite popular amongst his clients and the consuming public.

20. Epione is known for its innovative research and utilization of the most current technology available for skin, hair, and body contouring. At Epione, Dr. Ourian and his staff strive to provide the highest level of privacy, personal attention, and patient care. Moreover, Plaintiff maintains strict quality control standards as to its products and services and takes extreme measures to uphold the superior quality associated with its brand.

21. Beyond the advanced medical techniques and products offered by Epione, Epione has become well-known for the highly-desirable, aesthetic results produced by Dr. Ourian. While Dr. Ourian is a cosmetic dermatologist by vocation, he is a sculptor by avocation and his artistic skills are reflected in his work as a cosmetic dermatologist. One exemplary patient even described Dr. Ourian as a "skin angel" in an online post on Instagram®. See **Exhibit C** for a sampling of satisfied client testimonials.

22. Plaintiff advertises and markets his products and services via a number of channels, including social media networks such as Instagram®, Facebook®, and Twitter®. In particular, Plaintiff's social media presence has reached millions of individuals across these platforms. On these social media sites, especially Instagram®, Plaintiff often posts photographs and/or videos of actual patient results in the interest of transparency and to facilitate patients' trust in Dr. Ourian and his team at Epione (the "Copyrighted Work"). The Copyrighted Work represents products and services associated exclusively with and actually performed and/or offered by Plaintiff.

23. The Copyrighted Work contains a substantial amount of original material, including without limitation choice of subject matter, timing, lay-out, angles, lighting, and other elements that are copyrightable subject matter under the Copyright Act, 17 U.S.C. §101 *et seq*. As such, Plaintiff owns copyrights in these photographs and videos, many of which are registered with the United States Copyright Office. See **Exhibit B**.

24. Dr. Ourian and Epione have been interviewed and/or featured by publications with international readership, including *The New York Times*, *Shape*, *Cosmopolitan*, *Redbook*, *Elle Magazine*, *Marie Claire*, *GQ*, *Glamour, InStyle, STORY* (a Japanese fashion magazine), *Latina*, *The Los Angeles Times*, *The Daily Mail* (a British newspaper), *Allure*, *South China*

*Morning Post* (a Chinese newspaper), *Good Housekeeping*, *USA Today*, *Harper's BAZAAR*, *Entrepreneur Middle East*, *Life and Style Magazine*, *National Post* (a Canadian publication), and *Los Angeles Magazine*. Dr. Ourian and Epione have also been featured in radio and television broadcasts by networks with international viewership such as National Broadcasting Company (NBC), Fox Broadcasting Company (FOX), American Broadcasting Company (ABC), CBS, 21st Century Fox, Entertainment Tonight, Al Arabiya (a pan-Arab television news channel), The Doctors, KCAL 9, Good Day LA, and others. In each case, Epione and Dr. Ourian were praised for their expertise and lauded as leaders in the field of aesthetic and laser surgery. See **Exhibit D** for a sampling of these publications.

25. As a result of Plaintiff's efforts, patients from all over the world flock to Epione seeking the advanced, nonsurgical treatments offered by Dr. Ourian. Notable individuals such as Kim Kardashian, Melanie Griffith, Izzy Azalea, Cara Delevingne, Miranda Kerr, Sofia Vergara, Eva Mendes, Lady Gaga, Khloe Kardashian, Katy Perry, Kylie Jenner, Olivia Culpo, and Jenna Dewan Tatum are among Plaintiff's numerous satisfied customers. As a corollary, Epione has become very profitable.

26. Of Plaintiff's numerous sought-after treatments, the "COOLASER" procedure has gained significant popularity due to its novel ability to stimulate cell repair and collagen growth thereby treating facial lines, sun damage, skin pigmentation, and acne scarring. As such, the aforementioned "COOLASER" procedure is the subject of United States Trademark Registration No. 5199600. Plaintiff also possesses and has continuously used trademark rights relating to a host of other procedures offered by Epione in addition to "EPIONE" (collectively, the "Trademarks"). See **Exhibit A**.

27. ONLY Aesthetics advertises services and treatments for permanent hair removal, body fat reduction, feminine health, face and complexion, in addition to pain management and recovery. Similar to Plaintiff, Defendant ONLY Aesthetics also maintains a social media presence on sites such as Instagram®, Facebook®, and Twitter®, wherein photographs and/or videos are posted. Defendant ONLY Aesthetic causes this content to be shared with the understanding that the photographs and videos emanate from ONLY Aesthetics and represent

actual patients of ONLY Aesthetics.

28. On information and belief, Defendants How and Teo are co-founders of ONLY Aesthetics and, as such, direct and control most, if not all, of the business operations and decisions of ONLY Aesthetics.

29. On or around August 2018, Plaintiff learned of the existence of Defendant ONLY Aesthetics when multiple loyal followers of Plaintiff's social media pages made Plaintiff aware of Defendants' social media pages and the infringing images and videos displayed thereon. More particularly, Defendants were re-posting the Copyrighted Work from Plaintiff's social media pages, such as Instagram®, and representing that the services represented in such Copyrighted Work could be credited to Defendants. Indeed, on at least four occasions, Defendants have posted the Copyrighted Work misappropriated from Dr. Ourian's social media pages and subsequently represented that the products and/or services displayed therein are associated with and are derived from ONLY Aesthetics. See **Exhibit E** for a comparison of Plaintiff's Copyrighted Work with Defendants' misappropriated posts.

30. Additionally, on at least three occasions, Defendants have utilized one or more of Plaintiff's Trademarks without authorization from Plaintiff. More specifically, Defendants have posted content to its Instagram® page with captions featuring one or more of Plaintiff's Trademarks, including "COOLASER." See **Exhibit F**.

32. On information and belief, Defendants have been aware of Plaintiff's existence and intellectual property rights, including those in and to the Copyrighted Work and the Trademarks, as evidenced by their unauthorized use of the Copyrighted Work from Plaintiff's social media pages, as well as, of Plaintiff's Trademarks.

33. An in-depth look at ONLY Aesthetics' website reveals further distributing facts. Therein, ONLY Aesthetics impliedly asserts its company has been featured by publications, radio broadcasts, and television programs including the likes of *The Newspaper*, *The Straits Times*, *The Dr. OZ Show*, *The Doctors*, *NBC*, *FoxNews.com*, *Young Parents*, and *Yahoo!*. See **Exhibit G**. While some of these media outlets do mention or refer briefly to ONLY Aesthetics, the majority of those listed feature segments or pieces describing only the products or services

offered non-exclusively by Defendants without referring specifically to Defendants. In fact, Plaintiff has actually been featured in a number of the named media outlets.

34. Defendant ONLY Aesthetics has been associated with negative reviews and press. By way of example, the Yelp® page associated with Defendant ONLY Aesthetics displays a rating of only 2.5 stars out of 5. See **Exhibit H**. On this page, dissatisfied customers claim Defendants were "[v]ery misleading" and "waste my time." Moreover, in at least one publication, Defendants have been criticized for deceptive business practices. See **Exhibit I**.

35. Any perceived association between Plaintiff and Defendant will undoubtedly negatively harm Plaintiff.

36. Defendants' aforementioned conduct substantially affects American foreign commerce. As discussed above, and on information and belief, the products and services offered by Defendant are of mediocre quality and Defendant provides inferior customer service. Moreover, Defendant's quality control standards, if any, are unknown to Plaintiff but, at a minimum, Plaintiff lacks the ability to control such standards. As such, Defendants' conduct holds a great potential to not only cause Plaintiff a loss of sales in America, but also to harm Plaintiff's goodwill in the United States and diminish the value of Plaintiff's America-based Trademarks and Copyrighted Work.

**FIRST CLAIM FOR RELIEF**

**Federal Copyright Infringement Under 17 U.S.C. §101 *et seq.***

37. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 36 above and incorporates them by reference.

38. The Copyrighted Work contain a substantial amount of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. §101 *et seq.*

39. Without consent, authorization, approval, or license, Defendants knowingly, willingly, and unlawfully copied, prepared, published, and distributed Plaintiff's Copyrighted Work, portions thereof, or derivative works and continues to do so.

40. On information and belief, Defendants' direct infringement is and has been knowing and willful.

41. By this unlawful copyright, use, and distribution, Defendants have violated Plaintiff's exclusive rights under 17 U.S.C. § 106.

42. Defendants have realized unjust profits, gains, and advantages as a proximate result of its infringement.

43. Defendants will continue to realize unjust profits, gains, and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

44. Plaintiff is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of the United States copyright laws. Unless Defendants are enjoined and prohibited from infringing Plaintiff's copyrights and unless all infringing products and advertising materials are seized, Defendants will continue to intentionally infringe Plaintiff's registered copyrights.

45. As a direct and proximate result of Defendants' direct and indirect willful copyright infringement, Plaintiff has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill. Plaintiff is entitled to recover from Defendants, in amounts to be determined at trial, the damages sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement and Defendants' use and publication of the copied materials.

**SECOND CLAIM FOR RELIEF**

**Federal False Designation of Origin Under 15 U.S.C. §1125(a)**

46. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 45 above and incorporates them by reference.

47. Defendants have used designations in the form of Plaintiff's Trademarks, including "COOLASER," in connection with its goods and services in violation of 15 U.S.C. §1125.

48. Defendants' use of the designation is a false designation of origin, a false or misleading representation of fact which is likely to cause consumer confusion and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff and as to the origin, sponsorship, or approval of Defendants' goods, services, and

commercial activities by Plaintiff.

49. Defendants' wrongful activities have caused, and unless enjoined by this Court will continue to cause irreparably injury and other damage to Plaintiff's business, reputation, and good will in its Trademarks, for which Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**Federal Trademark Infringement Under 15 U.S.C. §1114(1)**

50. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 49 above and incorporates them by reference.

51. Plaintiff owns and has continually used its federally registered Trademarks in commerce in connection with all of its products and services, including Epione Medical Corporation and COOLASER procedure. See **Exhibit A**.

50. Defendants had constructive knowledge of Plaintiff's ownership of and rights in its federally registered Trademarks prior to Defendants' infringing use of the confusingly similar COOLASER mark.

51. Beginning at least February 2018, Defendants had actual knowledge of Plaintiff's ownership of and rights in its federally registered Trademarks.

52. Beginning at least February 2018, Defendants have continually used the confusingly similar COOLASER mark in commerce.

53. Defendants offer goods and services under the infringing mark in the same channels of trade as those in which Plaintiff's legitimate goods and services are offered under Plaintiff's registered Trademarks.

54. Defendants' infringing use of a mark confusingly similar to Plaintiff's registered Trademarks is likely to cause, and has caused, confusion, mistake, or deception as to the affiliation, connection or association of Defendants' goods and services with Plaintiff's successful business, Epione Medical Corporation, in violation of 15 U.S.C. §1125(a).

55. Defendants' actions constitute knowing, deliberate, and willful infringing of Plaintiff's federal registered Trademarks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. §1117(a) entitling Plaintiff to recover

additional treble damages and reasonable attorneys' fees.

56. As a result of Defendants' infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its federal registered Trademarks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendant West 54's conduct.

**FOURTH CLAIM FOR RELIEF**

**Federal Unfair Competition Under 15 U.S.C. §1125(a)**

57. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1 through 56 above and incorporates them by reference.

58. Defendants have deliberately and willfully attempted to trade on Plaintiff's hard-earned goodwill in its name and Trademarks and the reputation established by Plaintiff in connection with its products and services.

59. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products and services offered under Plaintiff's Trademarks, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

60. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants and their products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

61. Defendants had direct and full knowledge of Plaintiff's prior use of and rights in its Trademarks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

62. As a result of Defendants' aforesaid conduct, Plaintiff has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its Trademarks. This continuing loss of goodwill cannot be properly calculated and thus

constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. Entry of an order holding Defendants liable for infringement of the Trademarks and Copyrighted Work at issue in this litigation;

B. Entry of an order (on a preliminary and permanent basis) requiring that all Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

1. Using any of Plaintiff's Trademarks or any other similar mark, domain name or designation, that are confusingly similar to Plaintiff's Trademarks or gives rise to a likelihood of confusion, mistake, or deception with respect to Plaintiff's Trademarks;

2. Doing any act or thing likely to induce the mistaken belief that Defendants or their services or business, are in any way approved by or affiliated, connected, or associated with Plaintiff or Plaintiff's goods and services; and

3. Unfairly competing with Plaintiff in any manner whatsoever or causing injury to the business reputation of Plaintiff.

C. Declaration and entry of an order that Defendants' unauthorized use, marketing and displaying of Plaintiff's Copyrighted Work, and offering of goods and services for sale on their website and social media pages using Plaintiff's Copyrighted Work, willfully infringes Plaintiff's Copyrighted Work in violation of the Copyright Act, including:

1. An order requiring Defendants to remove all copies of Plaintiff's Copyrighted Work from their possession, either on websites and/or social media pages controlled by Defendants, servers or computers located at its premises, or on servers or computers located at the premises of any of its clients, customers, counterparties, employees, agents, consultants, and any other party who has

copies of the said Copyrighted Work without Plaintiff's permission;

2. An order enjoining Defendants and their respective agents, employees, officers, directors, attorneys, successors, licensees, and assigns, and all those persons acting in concert and combination therewith, from further infringement of Plaintiff's Copyrighted Work pursuant to 17 U.S.C. §502(a).

D. Entry of an order requiring Defendants and their agents, servants, and employees and all persons acting in concert with or for them, to file with this Court and serve upon Plaintiff, within thirty (30) days after entry of the injunction, a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of goods and services under Plaintiff's Trademarks and removing all of Plaintiff's Copyrighted Work from websites controlled by Defendants, as set forth under (B) and (C) above.

E. Entry of an order requiring Defendants to deliver up for destruction all infringing materials, including all storage media, that contain infringing copies of Plaintiff's Copyrighted Work.

F. Entry of an order requiring Defendants to deliver up for destruction all Internet webpages/scripts/html code, advertisements, brochures, current inventory of products, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or its agents bearing any of Plaintiff's Trademarks or any approximations or simulations thereof, and remove the same from any and all domain names and websites in their possession or control that bear the Trademarks.

G. An accounting against Defendants, and an award of monetary relief to Plaintiff in an amount to be fixed by the Court in its discretion, including:

1. All profits received by Defendants from sales and revenues of any kind made as a result of their unlawful actions;

2. All damages sustained by Plaintiff as a result of Defendants' acts of

copyright infringement, false designation of origin, trademark infringement, and unfair competition; and

3. All actual, compensatory, consequential, and other damages, including pre- and post-judgment interest thereon at the highest lawful rate, suffered as a result of Defendants' violations of 15 U.S.C. §1125(a) and 17 U.S.C. §106, in an amount to be proven at trial.

H. In lieu of any portion of the aforementioned damages, an award of statutory damages as provided by law.

I. Because of the exceptional nature of this case, resulting from Defendants' deliberate and willful infringement, an award of the attorneys' fees and costs incurred in this action, in an amount to be determined at trial.

J. Entry of an order granting Plaintiff such other and further relief as the Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial of all issues that may be tried to a jury in this action.

RESPECTFULLY SUBMITTED this 1st day of October, 2018.

**OMNI LEGAL GROUP**

______________________________

Omid E. Khalifeh
Ariana Santoro
Lara A. Petersen
Attorneys for Plaintiff,
Simon Ourian, M.D.